Petitioner. Mr. Thirswell for the Petitioner, Ms. Daring for the Respondent. Apologies for the interruption. Your Honours, in the Military Commissions Act of 2006, Congress very clearly and unequivocally barred the use of torture or the admission of torture in military commissions. And it's very clear that what they meant was all of military commissions, military commissions, the whole process. The issue in this case, of course, is that the lower courts held that the 948R does not apply to the referral stage or the charging stage. The government at the time earlier took the same position as the CMCR, but by the time it got to this court, and I think maybe even in the CMCR, the government agreed with us. So we have situation in which the parties are in agreement about the meaning of a statutory provision, and the lower court is not. And since they are not implementing Congress's clear intention, it falls to this court to do so via the petition for mandamus or other extraordinary writ. Why isn't what we held in Alma Shiri No. 4, that a similar admission of evidence derived from torture claim can be dealt with on direct appeal after the end of a commission proceeding? So there's an adequate alternative avenue for relief for closing mandamus. Why doesn't that apply in this case just as much? You have that same alternative adequate avenue for obtaining relief. In our case, there is, of course, the possibility of direct appeal after final judgment, but the nature of the violation is affecting the entire course of the proceedings. That's something that can be raised. That's sort of saying it was harmful error that pervaded the trial at the end of the commission proceeding and review process. And so it's all for mandamus. It's just such an extraordinary and rarely used power. And the number one factor you have to show is that you don't have an adequate alternative avenue for raising these claims. And you just said, of course, we can raise it at the end of the proceedings. So I'm just given what we said in Al-Nashiri 4, I'm not sure why that's not, doesn't make clear that mandamus worked last year. I didn't quite get a chance to finish my statement. It can be raised on appeal as an issue, but it is because of the nature of the torture program and the effect it had on the defendants, all of the accused in military commissions, the other detainees who gave statements to the FBI after similar abuse. And the evidence that was gleaned from that, there is a tangle of what will, through the poisonous tree issues that would have to be, will have to be untangled in any case that in which torture is involved. And I want to emphasize that when I say torture, I mean the CIA's rendition detention and interrogation program. This is not about an individual officer choosing to beat a suspect with a rubber hose until they confess. Those cases are wildly different from this one. The RDI program was unique in its severely damaged defendants and clients, making them difficult to actually cooperate with their lawyers or even accept their lawyers for a very, very long time. It's unique in how much evidence was derived from other detainee statements. These were individuals who were largely charged with a widespread conspiracy that culminated in the 9-11 attacks. All of the detainees had charges that implicated that. So these are people who are talking about each other. They're talking to each other. So that is unique. It's unique in its scope. It's unique in the deliberate use of violence. And mostly it's unique in the of the executive branch. I mean, this was a policy that involved multiple agencies. And I don't need to go into it. I mean, you're familiar with the RDI program. But the point is, it is completely unprecedented. And part of that is, again, the issues that I'll talk about under the harmless error rubric also, because it's those same issues mean that it can be, if it does, let me put it this way, if it does wait for the final judgment and appeal, the defendant, Mr. Nurjahman, has to have the opportunity to dig up the background of all the evidence that he's got. And I mean, that's a thing that defense lawyers do in every case. But this one, again, it's complicated. In his case, many of the witnesses against him live in Yemen and were provided by the Yemeni police to the FBI to give their statements. There are enormous obstacles to making the analysis that would be required to separate out any torture taint from the untainted information. So when the requirement for the issue, the torture he was subjected to, I'm not asking about the details of it, but this whole RDI system different in Al-Nashiri? Similar. They were, well, I can go on, but Al-Nashiri was one of the very first individuals who were put in the RDI program, and he may have gotten the worst treatment, but they were all, everyone in the RDI program, Mr. Nurjahman's name is listed in the back of the SSEI executive, as one of the people, executive, sorry, executive summary of the RDI program. He became routine and approved in many cases, mostly by the Office of Legal Counsel. I mean, he was tortured. And that's one of the... So the government itself agrees. No one here is trying to say what happened was okay, acceptable, or really even intolerable, at least in an evidentiary sense. The question I'm just struggling with is we're bound by prior panel decisions. We aren't sitting as an on-bank court today. And Al-Nashiri was subject to the same RDI process that you're raising here, and no doubt would have had the same claims of pervasive corruption of evidence that you are proceeding, and not before. Is there a basis for distinguishing this case from that one? I understand the question, and there is, but it's because of the effect of the RDI program on all of the evidentiary basis for the prosecutions of these cases. I mean, there is evidence that was not possibly tainted by torture, but a great deal of it is derived from statements by detainees made to either the CIA agents or the FBI after they were transferred to Guantanamo. This was a 1,300-page binder in which we're talking about, was it like nine or so pages that were at issue? So did you all actually see everything that was in this binder? I didn't see it. I flipped through it. I'm not prepared to talk about individual items. But my point is that do you have any evidence of the fact finders actually utilizing that information? Because here they're saying it's very sufficient otherwise, like even taking that out, there's enough evidence there. But I was just curious if you have any evidence of the fact finder actually utilizing that. Well, I mean, we do not. We're not privy to the authority's decision-making. But there's nothing in any writing or ruling to suggest that it had to have come from those pages. That is true. But I would cite Fulminante, which had a discussion of the very, very extraordinarily large effect on a jury or other decider, like the convening authority, of confessions by the individual who's being charged. Well, in El Nishiri, the government withdrew the pages. Do you have any idea about why not here? Well, I think the government will make the argument it makes. But I think its argument is essentially that that process of examining the rest of the evidence and finding it sufficient without the torture statements is the equivalent of that Nishiri remedy. And the problem is that Nishiri dealt with individual decisions relating to mostly a discovery and the scope of discovery. But I mean, this is the original charge. So this renders the whole process as a process of ultra-virus. I mean, it should not stand if it was based on a statement of torture. And the government can argue that there's sufficient evidence otherwise. And I don't, I mean, there may well be. I mean, I think there clearly is. I did read the statements that the CMCR cited that said, showed that he had, but like that, that just raised more questions for me. I mean, and for a petitioner, I mean, we need to get, unless we can dig under there and find, you know, trace the, who was tortured, who they talked to and when. But if you're, with your indulgence, I'd like to just move on to get some of the other mandamus requirements covered. And I'd say that the petitioner's right to relief is indisputable. I mean, I don't think that the government will contest that. Congress was well aware of the Convention Against Torture when it enacted Section 948R. It had, when it amended the section in the 2009 Act in a fairly significant way, what it did was expand the prohibition, not constrain it. I mean, it could have weakened it. It could have created exceptions. There are no statutory exceptions. I mean, the CMCR simply reads one of the terms admissible as meaning admissible at trial only. And that, but it is perfectly consistent with all the other, the other meanings that it has in other contexts. And like, it could be evidence that's used at trial that Convention Against Torture says, you know, evidence that's invoked at trial. I mean, all of those things are the equivalent of the admissibility that Congress was talking about in that section. I mean, and I don't want to beat this to death, but it's, it's, it's hard to understand what the justification would be in terms of the purpose, the legitimate purpose for finding that that only applied to trial. You're not asking to have the whole prosecution thrown out though. I thought you said in your petition that you just want them to go back and consider the referral process without any torture evidence. Well, that we do want to vacate the underlying charge sheet. So you didn't say, you didn't dispute that they, that this would make the case go away, that they could do. You're not contending that they couldn't then. The case will go away. The case will go away. I mean, if they, if they do another referral based on non-torture based evidence in your opinion. Yes. Okay. That's what I'm trying to say. Yeah. We know that that is our position. I mean, not so pervasive that they couldn't do this. Well, they could try. They could try. These same issues would arise, but the pure issue of the use of statements directly out of a tortured accused mouth would be gone. That's the big problem. The other evidentiary problems that torture creates, you know, are there and they will, they're in every case. And Mr. Nurjahman will undoubtedly pursue them if, if it is in fact dismissed and they re-refer him. But it's the, it's the use of these, the personal statement. I want to, I'm going to address one issue that has come up that the, in terms of the not clear and indisputable right to, to the relief, the usual, the standard is generally, you have to point to a case that says this is a violation. It does, you know, and of course we do not have that. And this court has said that it, it had, the quote is never required the existence of a prior opinion addressing the precise factual circumstances or statutory provision at issue in order to find clear error, justifying mandamus relief. That then that's United States v. Fokker Services 818 F3rd 733 2016, 2016 case. And so it's clear. I mean, Fokker, you know, explains why this, the uniqueness of this case is not an impediment to your finding of a finding that the rate is warranted in this case. But indisputable means there's no debate. Well, that's, that's true, but I mean, I should have said earlier that you believe the government would agree with you and I don't think they did. Oh yeah. I mean, I, that maybe not. I mean, I don't, I don't know. I mean, I think what I think what they would find indisputable, I will, they'll speak for themselves. I think they will concur that the statements should not have been entered into the referral binder and they should not have been considered in connection with the charges. I mean, the rest they can, they can argue it's so and other, similarly, other adequate means of relief, talked about that a little bit. And it's clearly one thing that's, that stands out. It's very appropriate under the circumstances. If for no reason that it's a decision affirming the lower lower court's opinion or failing to a legal green light for Adam to the government at a minimum to torture individuals, to seek a basis for charging them. And that I've just, I say at a minimum, because it's not holding of the CMCR is not clear. They say in one place, you know, admissible in all pretrial proceedings. And they say in another, maybe it means only referral. So I can only, I'm talking about referral here, but that the, excuse me, but the point is this case is not comparable. And the fact that it's not comparable actually in these unique, unique circumstances is not a, something that should militate against mandamus. And I, you know, appropriate under the circumstances, the Fokker services case, you know, addresses the appropriateness of the entry of a mandamus there, which, and the Fokker is a, is a significant case because it was a case in which the parties in a criminal case came to an agreement, you know, under the speedy trial, well, under the speedy trial act. And it was, you know, a deferred prosecution agreement, DPA. So they would, the government agreed to postpone charges while the defendant had the chance to rectify the wrongdoing itself. And this was a company, you know, a corporate defendant. So, and they all, everyone agreed we'll do that. And the section, there is a specific section 316, I think it's 3161 H2 of the speedy trial act that speaks directly to the DPAs and their legitimacy. It includes the language, statutory language. Mr. Thurshaw, you're over your time. We'll give you a couple of minutes and reply. Okay. Thanks very much. I urge you to read Fokker. Oh, thank you very much. May it please the court. Petitioner cannot establish an entitlement to writ of mandamus dismissing his military commission case because he has an adequate alternative remedy. Petitioner acknowledges that he can raise his claim on direct appeal from final judgment that the military judge erred in denying his motion to dismiss for a defective referral on the ground that the convening authority considered materials in the referral binder that he or she shouldn't have. But petitioner contends that this alternative remedy is inadequate because the taint of torture has irreparably contaminated the proceedings. But that isn't true because as the military commission demonstrated, it's possible for this court on direct appeal from final judgment after the CMCR reviews the claim to determine whether the military judge erred in denying this motion to dismiss for defective referral by simply just excluding the excerpt from the 9-11 commission report that petitioner challenges here, reviewing the remaining materials in the referral binder, and then assessing whether the military judge erred in making that probable cause determination. Can I ask a quick clarification on what you're talking about sort of government concessions here? My understanding is that the concession was use of torture-derived evidence in pre-trial proceedings. Is that right? The government has not taken a position on whether section 948R would apply to the referral process as the military commission explained below. I'm just trying to ask what the government has thus far said. Okay. And I thought it was pre-trial proceedings? No, in al-Nashiri 4, the government's position was that it will not seek to admit at any stage of the military commission proceedings statements obtained by torture under section 948R. But as to the referral process, I thought there was one where the government said that includes pre-trial proceedings. Pre-trial proceedings, yes, but not a referral because the referral occurs before a military commission is ever created. I'm just trying to understand how we know what is pre-trial because the charges and specifications service of charges are under the pre-trial procedure subchapter of the statute. The military judge said that the referral process isn't part of a pre-trial military commission proceeding because it occurs before a military commission is even created. So the purpose of the referral is to determine for the convening authority to determine whether to create a military commission. Military commissions like courts-martial aren't standing courts, they're ad hoc courts, so they don't exist until a convening authority creates one. I understand but something can still be... I'm just trying to understand where the government's definition of pre-trial comes from because it doesn't seem to map onto the statute, which for better for worse in 948Q, which is the charges and specifications, that's considered part of the pre-trial procedures even though that's what causes the convening of the commission. And so I'm just confused about, you know, one can think about in our system arrest and detention in the police station as pre-trial, at least if a prosecutor has said yeah do that even if it hasn't yet been referred to the court until they are actually arrested and detained and even then you got what 48 hours. So how does the government concession, how do they define pre-trial? And that's my first question, is pre-trial just starts the second the commission is convened, is that right? Right, so section 948R provides that no statement obtained by the use of torture or cruel inhumane or degrading treatment shall be admissible in a military commission. I asking about the government's concession which seemed to me potentially broader because using something in some pre-trial proceedings wouldn't be the same as admitting it in a military commission. So I'm really asking not about the statute but about the government's position. So our position in Al-Nashiri 4 related to any stage of the military commission proceedings and the referral pre-trial proceedings. Yes your honor and the but here the government and we don't think that this court has to decide whether section 948R applies to that referral process because you can assume without deciding that it does and even in that event petitioner would have this adequate alternative remedy and the military commission has already granted him adequate relief by after the the military commission had been convened the government provided to the defendant all the materials in the referral binder and that's when the defendant reviewed them and objected just to this nine page excerpt filed a motion to dismiss for defective referral and the military judge said okay I will look at these materials without the excerpt and I've determined that the remaining materials are sufficient to establish probable cause. In our brief at the decision also in the Coppedge case to explain how a similar procedure is used in the grand jury process and there the defendant at the district court and on direct appeal from final judgment argued that the court should dismiss the indictment because the grand jury considered allegedly perjured testimony and the district court and this court rejected that claim by looking at the other materials that the grand jury considered to decide that those materials were sufficient to support the indictment. So we think that the government intend to use torture derived evidence in its referrals going forward? No your honor the government does not intend to do so. Don't we have to decide first whether the exclusion of or the use of torture is a structural error because if it isn't then on appeal he's already been tried with a structural error that is. And we think that on mandamus review Petitioner hasn't established that it qualifies as a structural error one because they don't cite any authority to establish that but two the can be fixed is it a type of error that's subject to traditional harmless error standards of review and we think that it is and the military commission demonstrated how is that on direct appeal from final judgment this court would just simply exclude the excerpt. Okay my question is don't we have to decide that that it is not a structural error? I think that you could I think that you could still address that question on direct appeal from final judgment and then the favorable standard of review because it wouldn't be under mandamus. Under mandamus he must establish a clear and indisputable right but also that he doesn't have an adequate alternative remedy and we think he could still raise the structural error claim on direct appeal from final judgment. Every structural error every structural error argument is not mandamus go free criminal trial. Correct. Mandamus is narrower than structural error. I'm sorry your honor. Mandamus review is yes. A little bit about the timeliness issue because it was supposed to be filed within 20 days but we also have some precedent that when you're on mandamus it's a little more liberals I was just curious about why that wasn't challenged. The timeliness yeah we we understand that they can raise a petition for a rid of mandamus without waiting for a particular time. Okay. The government respectfully requests that this court deny the mandamus petition. Thank you. Thank you. I'm going to briefly address a few of the things a couple of the things that the government stated. I was surprised well to hear the their answer with regard to their position on referral and saying that it's not the use of torture is not a violation if it occurs at the referral stage. I think that is what she said I mean and I mean so but I just want to point out that in the CMCR proceeding below prior to this one that I'm reading from the CMCR position which quotes the government brief the petitioner and respondent and this is the quote are united in recognition that torture of any kind is legally and morally unacceptable and that the judicial system of the United States will not permit the taint of torture in its judicial proceedings and what they did not say is except it's okay for the charges it's okay for charging so I again I question you know the government is trying to okay I won't the other thing I wanted to say is the commission said here are the the courts below said is we're we're throwing aside that evidence that you identified as torture derived we're taking that out and now we're going to make our decision yeah that's so that's not relying on torture derived evidence it's that's refusing to rely on torture but the convening there's a procedure for military commissions and the convening authority is the charging ultimate charging referral but if the government says whoops you're right we will not pay attention to that evidence we are throwing it aside that's you were just charging them with uh being in favor of relying on this evidence I don't think that's what this record shows I I um you know that's what they suggest now but they said in the brief there's the general statement is a general strong condemnation of the use of torture in any form in any judicial proceeding in the United States I mean it doesn't matter you know my interpretation of their language but it's it's not clear what they really mean and whether they are actually um I assume the United States government represents in this court that will not use torture derived evidence in convening papers going forward that will not do so well the problem with that judge is that there is a ruling by a court of superior jurisdiction over the military commissions that has said torture evidence can be doesn't matter if the government chooses not to put it's a government that puts together the charges they put together the supporting documents there's the court wasn't saying we will force the government to use torture derived evidence so if the government has said we're not going to use it and it said that as a matter of public record in the court of law by an officer of the court I just don't think it's fair of you to characterize them as saying oh it's they'll be fine go ahead do it going forward judge this is a this is a question of voluntary cessation and it's the the government can represent no one's arguing mootness here because your client yes that's a prospective policy yes but that the argument I think is even though the CMCR has authorized as a matter of law the use of torture pre-trial and that is what it holds um we promise we won't act on that so like that and so you don't have to we won't use that is what they said we won't use torture that's right they're promising derived evidence yes they're promising not to do that I believe that statement is made in good faith I also know that there's going to be an election in November and it's unclear you know whether the personnel at the Department of Justice are going to change and there will be outstanding a ruling that torture evidence may be used pre-trial I don't think the government can guarantee anything past the date of the election I mean I and I appreciate that they will not try not to use it but if that does not the that does not cure the problem I mean the problem is that CMCR made this ruling against you know all that I won't you know the arguments against that then you can challenge it on appeal that will that avenue will remain open to you that that's true but in the meantime that these proceedings have been taking multiple years and so for multiple years the CMCR opinion is controlling law um and so it's it's it's not it it's an unusual case because the the and it has it has enough effects far beyond this case I mean we can yes we can do a final appeal but in the it whenever that happens in the in very indeterminate future prior to that um the government can use information pre-trial if they change their mind and change their good faith commitment not to which they may do when there's new personnel in the in the possibility um I want to say one thing one final thing about what I said about final appeal I did say yes uh Mr. Nurjahman can appeal after final judgment um but I I didn't mean that that would be effective or that was a meaningful um avenue for relief because of all the reasons I discussed previously so I don't want to be backed into a position of where I conceded that you know final appeal is a valid adequate alternative mode of relief that is not our position and it's not what we argued in the brief we argued the opposite so I just want to be clear on the record that that is our position. Thank you.
judges: Henderson, Millett, Childs